Case number 25-1163, Clean Air Council, et al. Petitioners v. Environmental Protection Agency and Lee M. Zeldin, Administrator, U.S. Environmental Protection Agency v. Lee Public Petitioner. This course is for the respondents and this is for Ms. Lazzaretta for the interveners for respondents. Good morning, and may it please the Court. Adrienne Lee, appearing on behalf of Petitioners. I'd like to reserve 3 minutes for rebuttal. Petitioners' members are exposed to toxic emissions from steel mills, which include famously harmful pollutants like lead, mercury, and arsenic. They've been waiting for more than 20 years for regulations that reduce those emissions to the extent the CLEAN Act requires, and they would have gotten some relief due to standards EPA promulgated in 2024 had EPA not excused the industry from compliance pending a reconsideration rulemaking that aims to roll them back. This case is not about whether EPA can change its mind or revise its regulations. It's about whether EPA must respect statutory limits on its authority when it does so. The Act prohibits EPA from staying a final rule pending reconsideration for more than 90 days. It also requires revisions to final standards to go through notice and comment, with limited exceptions. EPA has attempted to evade both these constraints. The record makes clear that EPA is reconsidering the 2024 rule and has issued the functional equivalent of a 21-month stay pending that reconsideration. EPA made that unlawful delay final and immediately effected without notice and comment and without a legitimate good cause basis, and then later argued that good cause was unreviewable because it had promulgated a second final rule. I'd like to start by pointing out that the court has already rejected previous attempt by EPA to nullify a rule it has come to dislike. In Airlines-Houston, this court held that EPA did not have authority to extend a stay of a final rule pending reconsideration beyond the CLEAN Act's 3-month limit, even when purporting to do so under a separate, more general authority. This court should reject this attempt at rule nullification as well, because EPA does not have authority to stay in compliance with the 2024 rule to accommodate its plans to roll it back. So here EPA delayed the compliance deadlines through rulemaking. Could it effectively have also delayed compliance deadlines through enforcement discretion? Could it have just announced in a memo or some kind of statement that it would not enforce the 2024 rule? So if sources can show that they have serious issues with compliance by the compliance deadline, EPA has authority to do source by source compliance extensions and also exercise its enforcement authority, yes. So, then, I mean, if it has that enforcement discretion, and it thinks that compliance here would be infeasible or technologically difficult for longer periods of time, I mean, isn't it better that they did a rulemaking as opposed to just exercise enforcement discretion? I mean, if they have the enforcement discretion, then does it matter? I think it doesn't matter whether it's better. It's a limitation that Congress has placed on EPA's authority. And it says that if EPA wants to revise the rule, which it can, it has to go through notice and comment rulemaking. So, it's just a constraint that Congress placed on EPA's. It is revising the rule through a new rulemaking. It's just, it has also done a rulemaking to delay the compliance deadlines, a separate rulemaking. And that's what's not allowed by the statutory constraints on EPA's authority. You think because of the 90 days. Yeah, and I think that goes to. The structure of the Clean Air Act, I mean, the Clean Air Act was designed to reduce pollution. The 1990 amendments to the Clean Air Act were supposed to speed EPA's. Efforts to reduce that pollution 307B says a petition for reconsideration does not stay the effectiveness of a final rule. The only way that EPA can do so is if there is a mandatory reconsideration and the act still limits that stay of reconsideration, stay pending reconsideration to 90 days. And so Congress in amending the Clean Air Act did contemplate that. The situation might arise and has addressed that. So, the key and arguably the key airlines Houston was that the only reason given. Was to facilitate reconsideration throughout that opinion. They emphasize that EPA had not separately found that the existing date was impractical, which is what are 7. That more general authority for 2 required. So EPA's argument. Is that this case is just different because we did make findings about impracticability. So. It seems like there is a fairly strong argument that when they make the finding impracticability here, which triggers by 3. You know, they are allowed to do that and they are allowed to change the compliance date. Well, a couple of things, I mean, 1st of all, airlines Houston. Does say that EPA can't use it's more general rulemaking authority as you pointed out to evade this statutory limit on its ability to stay a rule pending reconsideration. And I think the 1st thing is to look at what EPA really did say about why. It was doing this, it said it was to allow for more time to reconsider sort of tease out what they're allowed to do those. Right? So just assume for the moment they had really, really good reasons. Or finding the existing compliance dates impracticable and for each 1, we think they're more likely to be able to comply in 3 years. I think you'd have to agree, I think maybe you won't that if they promulgated a rule that just said. Compliance is not practical in 1 year. It is practicable in 3. they're allowed to do that. Right? So, no, if the purpose of suspending compliance for that period of time is to allow for reconsideration, I think I'm doing it. What if it's both there? It is, in fact, impracticable to comply with this in 1 year. And also delaying it is going to let us fix the standard in some way, but it. When we are presented with the question, what should the compliance date be? We have specific bases to find that. That 1 year is impracticable and 3 years, but 3 years is better. So, 2 things 1, even if the agency is doing this in order to fix the rule, we still think that the statutory limitation on the stay still applies and they would have to do that through rulemaking. But the 2nd point is that EPA didn't make findings about why the new deadlines do provide for compliance as expeditiously as practicable. I think a way of thinking about it is that. EPA spends a lot of time talking about why it thinks the old deadlines aren't practicable. But then it sets all the deadlines at the 3 year mark, and that doesn't explain why EPA previously found that these 1 and 2 year compliance deadlines were appropriate. And now 3 years for compliance is appropriate. It doesn't follow from the conclusion that. The old deadlines weren't practicable that the new deadlines necessarily are and I think the reason doesn't make sense is because the answer is that. This extension allows for EPA to reconsider the underlying standards. Where is the line between reconsideration and a new rule because EPA. Undoubtedly has the ability to promulgate new standards or different standards and a new rulemaking. And so I understand some of these arguments were 1st raised in a petition for reconsideration. But, but now, you know, obviously, there's been a change of administration new EPA sees the facts on the ground differently wants to do a new rule. Um, why would that be. Barred right and so doesn't I mean, there's a certain logic in delaying the compliance deadlines while the new rule is. It's complicated because otherwise the new rule will have no effect if the old rule goes into effect. Right, so they're planning to change the standards, but. Steel mills have to comply in the interim. Then, you know. What's the EPA supposed to do with that? I think the cleaner act contemplates that. And I think, as you point out, there is a, there has been a change of administration. The head of EPA announced that there would be rollback rulemakings, including of air toxic standards and specifically pointed to steel mills as 1 of the new rulemaking standards. 1 of the air toxic standards to be rolled back and agencies can change their mind. That is not uncommon, but the cleaner act was designed to contemplate that possibility. And it doesn't allow the kind of ping ponging that this would entail that every time the agency changed its mind, the old will necessarily doesn't go into effect. There are ways for. The EPA to address potential compliance issues if there really were compliance issues, but just because the EPA has changed its mind about the wisdom of that old rule doesn't allow it to stay the rule while it changes its mind. It seems to me that, of course, a new administration can change its policy. Priorities, and it couldn't reconsider rules, but there are procedures that are. That must be followed in order to do that. And that this agency chose a particular provision that. About moving compliance deadlines, and the. Standard is the EPA must provide for compliance as expeditiously as practicable. But in no event later than 3 years after the effective date. And to me, it just seems to me that this particular provision. Is not a great way to address big problems in terms of. The original rule, you don't move the compliance deadlines. In order to address these big problems, or there are other things the EPA could have done to address those problems and this procedural requirement. I don't see anywhere in the record where there actually is a justification that the deadlines that were chosen are as expeditiously as practicable. There's no discussion of that in the rulemaking. So, it just seems to me that this case isn't about what the EPA is allowed to do. It's the procedure they followed in which to do it. And they can't use this particular. Provision and move compliance deadlines where. They're just trying to address other issues that they need to rewrite the rules. That doesn't mean that moving the compliance deadline is it makes compliance as expeditious as practicable. Yeah, I think that's exactly right. And I think that's the principle that airlines Houston is really getting at. Yes. EPA has other authorities under the cleaner act, but it can't use those authorities to get around. This prohibition on delaying a rule, because the agency has changed its mind about those rules. Wasn't that case about effective dates of rules and not compliance dates, which are meaningfully different. Yeah, I've given some thought to that and I think 1st of all, a stay pending reconsideration under 307 D7B right? Is staying the effectiveness of a rule pending that reconsideration and I understand that he uses the term effectiveness, but as a matter of practice, EPA interprets effectiveness to mean. When the rule is affecting regulated industry conduct, I mean, this rule, the steel mills rule has been in effect since June 3rd, 2024. So, when EPA administratively stayed the rules effectiveness pending mandatory reconsideration, it was staying the upcoming compliance dates and in cleaner council view. Pruitt, I think the same was true. The rule was already in effect and when the agency stayed the rules effectiveness pending reconsideration, it was really staying compliance with the rule. I think that also flows from the way that provision works, right? Because air toxics rules typically become their effective date is the same day as a petition for reconsideration would be due. So, the provision really wouldn't make sense if it had to be a delay of the effective date and it's less obvious actually, in our alliance, Houston, why delaying the effective date would be the same as that. And the core reason that because there were compliance dates that would need to be followed during the pendency of this delay of the effective date, it was the functional equivalent of a stay pending reconsideration. And here, the fact of what EPA has done is that for 2 years, the compliance obligations that would be in effect are not in effect. So, it is in some ways closer than the situation in our alliance, Houston. Can I just ask, I want to again, put aside whether the reasons they've given for it being impracticable are good or not, but just assume struggled with the following. Assume that they find this standard is so nonsensical. It can never be complied with is impracticable in 1 year and 3 years and 10 years. EPA still has to make a choice of what the compliance date should be. And when they're just looking at that, why can't they say if this standard is impossible to comply with, a better compliance date is 3 years rather than now. It just seems self-evident, arguably, that right now is a worse compliance date for the impossible than 3 years. And they have authority to change the compliance date. So, the difference there is that, well, 1st of all, EPA said that it was doing this to accommodate its desire to reconsider the rule. But I think another way of looking at it is asking the question, is this additional amount of time going to lead to compliance absent any change to the rule? And you can see from that question that in your scenario, the answer to that question would be no. And so doesn't this standard assume that compliance is feasible? It has to be for compliance as expeditiously as practical assumes that there can be compliance. If compliance is impossible, this is not the correct rule to this is not correct provision to apply to address the situation. Yeah, and I think that would be a merits issue that the agency could address by changing the rule. And, I mean, I can give an example of the sort of thing that would. But in answer to Judge Garcia's question, it just seems to me that if compliance is impossible, this rule doesn't allow you just to set it for the maximum possible time because it's still not as expeditiously as practicable. This rule doesn't address a possibility of compliance. Yes, and I think where you're getting at maybe is EPA can't set 3 years as some kind of placeholder so that it has time to reconsider the rule. Exactly. Why can't it do that? I mean, the whole question is whether it can, right? So a similar question would be, what if EPA genuinely believes no one's going to be able to comply with this, but they will be able to comply in 5 years, right? The obvious answer would be we can't do 5 years. We're going to get as close to that as we can. The statute doesn't let us go beyond 3, so we're picking 3. And I guess you would say you don't believe compliance is practicable in 3 years, so that's impermissible. And that seems like a worse outcome from the perspective of a regulator to force everyone into noncompliance when they genuinely don't think anyone can do it. Yeah, I think I understand your question better now. So in that scenario, right, if the agency had determined that compliance really wouldn't be possible until 5 years from now, but the Act sets a hard 3-year limit, the agency would still need to explain that in the rulemaking. It would say that we have made findings that for X, Y, and Z reason. Aren't there other ways to address something that the industry just can't comply with other than moving a compliance deadline? Yeah, and I think- I mean, there's the enforcement discretion that Judge Rao referenced. There's the president can grant a 2-year national security exemption. Are there other exemptions that would apply in that situation? Those are the tools that I'm aware of. So I think you covered the presidential exemption, the source-by-source compliance, 1-year compliance extensions under I-3B and enforcement discretion. I think- Wait, does I-3B allow them to keep renewing an exemption, an extension? I'm not sure from the face of that provision, but it definitely allows for a 1-year extension. At least 1 year and maybe- I know the presidential exemption, I think, is renewable. The presidential exemption is renewable. So if the president issued a presidential exemption and he made the findings required for that authority and also said, I'm doing this in part to facilitate reconsideration of the rule, because frequently national security interests might overlap with the fact that it's hard or impossible to comply with the rule, just like- and so you'd want to fix it. Seems to me that you would be arguing that he can't do that, that by mentioning that he's using the national security exemption to facilitate reconsideration, it becomes impermissible. But your argument is that there are, as Judge Pan says, there are 5, 10 different things EPA can do. And your argument is that under none of them other than 7B, can the EPA think about facilitating reconsideration? Well, I think for the presidential exemption, I'm not sure that's the same as the constraints on EPA's authority to say rule pending reconsideration. Right, it's not. It's so- if you put side by side, I-3 and I-4 are, you can change the compliance date or you can have a national security exemption. And each one has specific findings you have to make. I-3 is compliance is impracticable. And 4 is national security findings. And I'm struggling to understand why under either, if you make the required finding and also say we're doing this in part to facilitate reconsideration, it becomes impermissible. Are you- for the first example, you're talking about I-3B, the source by source extensions. Talking about the compliance date extension authority. Right, so I think for I-3A, the requirement that a compliance date provide for compliance as expeditiously as practicable, that does mean that if the new compliance date is simply a placeholder for EPA to change the underlying standard, that's not allowed. Isn't the way the statute works that if you want to delay for reconsideration, you've got 90 days, you're supposed to reconsider it within the 90 days that's provided for in the statute. And then if you can't do it within 90 days, there are other things you can do. You can exercise your enforcement authority less stringently. You can ask the president to give you a national security exemption. There are other things to do. But what you can't do under the statute is take a provision that explicitly says you have to provide for a compliance deadline that's as expeditious as practicable and ignore that standard and just move it to the maximum date. I mean, I understand that the agency has a problem here, but I think the very narrow question in this case is whether they use the correct tool to address the problem. And it seems to me that moving a compliance deadline that has a specific standard that hasn't been met is not the answer. Where in the record is there any discussion that these compliance deadlines are as expeditious as practicable? I can't find that anywhere in the rulemaking. No, and we couldn't find that either. And we raised that in our briefing on the delay rule itself. And then EPA has had a second bite at the apple to explain itself with a second final rule. And we still find no indication in the record or in EPA's second explanation of why the new compliance deadlines do provide for compliances expeditiously as practicable. Why is it not sufficient to explain why the current deadlines are impracticable? I mean, isn't that effectively the same thing? I mean, what affirmatively would the agency have to say? So, they've explained why these deadlines are, you may agree, disagree, but they have put forward explanations about why it's infeasible and impractical to meet the current compliance deadlines. So, I think two ways of thinking about it. One, you could give an explanation for why the one year more would provide for compliance. Let's say that facilities were building something and one piece of that item is missing due to global shipping delays. And so, the project will just take six months longer than previously anticipated in the agency makes that finding and says that we think that compliance is going to happen. So, we need something that specific in order to delay the deadline. Something that granular. Well, I think more importantly, EPA didn't offer anything here. But I'm just trying to think of what they can offer. You know, what you think is missing because they've undoubtedly said why the current deadlines are impracticable, which suggests that they, you know, which certainly supports the fact that steel mills need additional time. So, how granular does the agency have to be to move the compliance deadlines? Again, I think the agency needs to say something. And they have spent a lot of time saying why they think the original deadlines don't work. And the answer to that is because as EPA frames it, EPA thinks that those standards themselves need to be changed in order for compliance to be possible. Does that answer any further questions? No. Okay. Thank you. We'll give you a couple minutes on rebuttal. Okay. Thank you. Morning. Morning. Good morning. May it please the Court. Peter Torstensen for the United States. This Court should deny the petition for two reasons. First, EPA lawfully exercised or lawfully revised compliance dates from the 2024 rule. The revised deadlines complied with the three-year statutory limit. And EPA explained standard by standard why the original deadlines were infeasible and why the revised deadlines were warranted. EPA's predictive judgment about how expeditiously compliance with the 2024 rule's opacity limits and work practice standards could be achieved warrants substantial discretion. Petitioners argue that air reliance bars EPA from revising the compliance dates, but that case doesn't help them. It involved an express statutory limit on staying effective dates during reconsideration proceedings. It had nothing to say about revising compliance dates, which the statute adhere gives EPA authority to do. This Court should reject- Can you show me where in the record EPA actually made findings that the compliance dates it chose were as expeditious as practicable? Because I couldn't find that in the rulemaking or anywhere else. Well, two things, Your Honor. I would say first, in the responses to comments, well, in the IFR itself, the EPA identified that the original compliance deadlines were impracticable for a couple of reasons. They based- No, I understand that. But I'm interested in why the deadlines they ended up choosing are as expeditious as practical. Right. So, in the responses to comments, the JA 835 to 843, they walked through why each of the standards were infeasible under the original compliance deadlines and why those deadlines were impractical. You're still addressing the original deadlines. That wasn't my question. And I do a third time. For the third time, where in the record does it say that the deadlines that they ended up choosing, the new deadlines, are the ones that are as expeditious as practicable? So, I would say they get it in two ways. The first is establishing that it's infeasible. And the second is that they needed some additional time in order to comply.  But saying that the first ones are infeasible and we need more time to comply doesn't support the actual compliance date that was chosen and find that the actual compliance date that was chosen is the one that is as expeditious as practicable. Would you agree with that? In general, yes. I would say that it's important to understand- So, in general, you agree that they did not comply with the statutory standard? I wouldn't say in general I agree that they didn't comply. I would say in general- But that is the statutory standard. The statutory standard is that it must be as expeditiously as practical. I agree with you. I think we're dealing with a 12 to 24-month period of time. And so, once they make- As Judge Rao was identified in sort of the questioning with Petitioner's Council, we're talking about a limited determination about 12 to 24-month extensions. And so, once it makes the initial finding that it's infeasible, they deserve- They're exercising their predictive judgment about just how quickly compliance could be achieved within this three-year period. Right. That's what I'm trying to find out. Where do they exercise that judgment about which is as expeditious as practicable? It just seems like if they can just set any deadline to give them more time, that reads this language out of the statute. Well, I think they're limited to the three-year period of time. I understand that, but that's a different part of the statute. It's as expeditiously as practical, but in no event later than three years after the effective date. It doesn't say set the maximum time to give people more time because what you set wasn't good. It reads out the whole requirement that it has to be as expeditious as practicable to do it that way. I think EPA deserves, in terms of the judgment, that two years, they set all of those at two years, in part because they identified that compliance within the three-year period would be impracticable, and so they set... But where is the finding about expeditiously as practicable? I think your answer is there is none. Is that correct? There may not be a specific finding about the precise number of months that are required, but they do make the finding in their responses and comments that... But the findings that you're pointing to do not address expeditious as practicable. They just say the original deadlines are not practicable and we need more time, but they don't show which time is as expeditious as practicable. I do agree that they do not identify a specific number of months. I think response to comment, I want to say it's at 835. That is where they address the comment about expeditiously or as expeditious as practicable. Where is it? So, JA 835. And what's the language you're pointing to? In their response 1.1, I mean, they disagree that the revised deadlines do not provide for compliance as expeditiously as practicable. The compliance issues identified for each category provided them with a reasonable basis that it is not practicable under the original deadlines. But it doesn't say not practicable. It has to be as expeditiously as practicable. Where's that? They did not make that specific finding about a certain number of months. Aren't they in violation of the statute? Isn't it as simple as that? Well, if they make the original finding that compliance within three-year period was not practicable, the statute cabins their ability to extend or to revise the compliance deadlines to essentially two more years from what the... I think you're rewriting the statute to leave out the expeditiously as practicable part. I believe that they have to have the discretion to be able to revise the deadlines up to two years, assuming that they make... But we have to comply with the text of the statute, don't we? The text of the statute says provide for compliance as expeditiously as practicable. But not later than... If we're going to be textualists, we can't read out expeditiously, can we? And I don't think that we're reading out. I think that they made the determination that... And I believe that the response... Where's the determination? That's where we started this whole conversation. Where's the determination of expeditiously as practicable? I believe that the, you know, JAA 35, you know, the responses and comments... We just read that together. It's not there. Would it be sufficient if EPA had just said, based on the fact that the old standards were impracticable, it, you know, it requires one or two years is as expeditiously as practicable? You mean to say that they revised... Yeah. I mean, if they just, like, repeated the words of the statute based on why the previous standards were impracticable. I agree that that would be certainly more precise and that would probably have helped. But, I mean, I think that the court can affirm, you know, their decision or kind of uphold their decision based on sort of what they've included in the record here. I have a question about how enforcement discretion would work here. If, I mean, Ms. Lee concedes that EPA could delay compliance deadlines using enforcement discretion. So, if EPA were to issue... I'm just curious how this would work. If EPA issued a memo saying we are not going to enforce the compliance deadlines because we're doing a new rulemaking and we think whatever, you know, gave some of the same reasons for delaying in the rule, would there... Could you still bring a citizen suit? So, if EPA withheld its, you know, exercise enforcement discretion, I assume that citizen suits would still be available for the failure to meet compliance deadlines. Is that... Yes, our understanding is that citizen suits would be available and that would be one risk. That's a reason for doing the rule. Yes, that would be one risk of, you know, essentially exercising their enforcement discretion not to enforce compliance. Yeah. So, some of these explanations about why the existing deadlines were impracticable are a little bit thin. Can you help me understand the explanation for the blast furnaces? So, this is the explanation that the actual regulation in the 2024 rule is different from what the preamble justified. Right. But you would have expected to see an explanation of why what's in the rule, this governance, is in fact impractical from EPA. But instead, you could read the response to comments to just say, well, there's a discrepancy, so we need some time to figure it out. And if EPA's action here was allowed, it's because it made specific findings that the existing dates were impracticable. So, it's important that this hold together. So, do you have an answer about the blast houses in particular? Yeah. So, I mean, I believe as you identify in JA 840 and their response to comment, they do note that that creates, you know, complicating factors in terms of determining how compliance would be achieved. I agree that there is, you know, there's a disconnect between the preamble and the regulatory text, and that disconnect needed to be resolved in order for them to determine how to achieve compliance. And I believe that there was also, yeah, and they explain here that, you know, the discrepancy poses compliance challenges and that, you know, the sources need to sort of sort out how compliance would be achieved. You know, I agree that that is not the most fulsome explanation, but it does at least provide that rationale for why the additional time is needed to make sure that they can determine which of those two methods would be used. Can you address just one obvious other fix here would have been to complete the actual substantive reconsideration of the rule? What is the status of that? I know the EPA is considering another rule, and I believe that they've identified that in both the IFR and the final rule that that process was underway. I don't know where that precisely is, but I believe that that is an effort that's underway. Is there any anti-backsliding rule that applies to this part of the Clean Air Act? I'm unaware of any such provision, but I can't obviously say specifically. I didn't see anything in the briefing about it, but I was just wondering whether there was. Yeah. And then I would just move on to say that, well, I think that, are there any other questions? I think that covers. Any other questions? Thank you. Next, we'll hear from interveners. Please. Go ahead. Your Honor, may it please the Court. My name is John Lazzaretti, Counsel for the Industry Interveners for Respondents. Your Honor, we wanted to emphasize just a few points. First, to lead off, I think this was framed as a political issue. It's not a political issue. Reconsideration of this rule started in August of 24 under the Biden administration. There were problems recognized with this rule from the get-go, but the issue was whether it could be fixed with corrections or required a full revision of the rule. That took a while for the EPA to decide, and that's what brought us into the time pressure we were under entering into June and July. The other thing, there was a lot of discussion about, you know, where in the records the finding that this is as expeditiously as practicable, and one of the things I'd emphasize is that the standard is supposed to be the same for what basis and purpose EPA is required to do. When it's amending a rule is when it's promulgating a rule. In 2024, there was nothing in the record talking about why the one-year and two-year deadlines were as expeditiously as practicable. Excuse me. The final 2024 rule doesn't use the phrase expeditiously as practicable either, so that's not anywhere in the preamble. The hard question in this case is, for a lot of these issues, EPA's explanation is basically the standard that was promulgated makes no sense and no one can comply with it. So, the hard question is, why does it make sense to set the compliance date at three years rather than, I guess, something else? So, can you sort of address that? So, from a legal perspective, it makes sense because that's what I-3 says. It says three years or, but in no event, longer than three years. So, the only reason that language is necessary is there may be something that is not as expeditiously as practicable within three years. You still have to set it at three years. I don't think that's what it says. I think Judge Garcia's question was, what if it's not practicable at all even within three years? What are we supposed to do here? Well, that's the second half of the language. So, it says set it as expeditiously as practicable, but in no event. So, when you have an event that is no longer practicable, it still has to be set at three years. And that's true if it's five years. Oh, so you're reading this language to say if it's not practicable at all, it can be set at three years. You would expect that the agency wouldn't promulgate a standard at the time they believed was not practicable at all. But ultimately, you're talking about the question of what in the statute, what in the Clean Air Act provides for what that number has to be. It's still I-3. It certainly contemplates the idea that EPA will set a deadline that is not practicable. Whether it thinks it's five years or 50 years or 150 years, it has to set it at three years. So, your view of the statute is if it can't be complied with until five years, you set three years. That's right. And if it can't be complied with at all, you still set three years. That's the most you can set the deadline at. And if you find that it's not practicable within three years, there isn't a lot of effort EPA needs to put into finding whether it's five years or 10. It has to be three. And they have to set a compliance deadline. If they promulgate a standard, it has to have a compliance deadline. That's right. And when we're talking about compliance deadlines, there was a discussion about effective date versus compliance deadlines. I mean, if the rule is effective immediately, the Clean Air Act does distinguish between effective dates and compliance deadlines. There are a lot of compliance deadlines in the rule when it's promulgated. There isn't just one. So, these particular standards were focused on, you know, three different time periods. But they have initial compliance deadlines, continuing compliance deadlines. This is complicated rules. And what they do is they set various timelines for various actions. And one of the points I wanted to emphasize is there's not a lot of discussion in the first rulemaking as to why they picked one year. All they say in the preambles and even the response to the comments, they have a whole section six. It doesn't say on anything other than we don't think it'll be that hard to comply. Therefore, we think one year is appropriate. So, there isn't, you know, there's more explanation in the IFR in the final December rule than there was in the original rule for setting the new deadlines. The other thing I wanted to emphasize is, you know, I think you had a question about the blast furnace standard. You know, I wanted to just add some color to what EPA describes. So, when they, you know, in their brief, they talk about blast furnace is a large vessel. And that doesn't really do it justice. Every furnace is unique. But what we're talking about in general is it's a 200-foot tall, 50-foot wide vessel with 10,000 tons of molten iron and rock that's being blasted with 2,500-degree air over 200 miles an hour while continuously feeding raw material on the top. One of the primary obligations of an operator is to ensure that this is run as stably as possible, both temperature and pressure. A stable furnace is the best furnace both for iron making and for environmental protection. Incidents do happen, though. EPA talks about burden slips. That's one cause. There's a lot of other causes of upsets in a furnace. There's issues with raw material. There's issues with sensors. There's issues with the gas handling system that can all lead to sudden pressure changes. That pressure has to go somewhere. If it's built up to the point that it can't be handled by the system safely, that's what the bleeder valves are for. They're emergency release pressure release devices. And they're put throughout the furnace. What EPA did in this rulemaking is they set a numeric cap on that. They said you can only, if it's a large furnace, open it four times in a year. What happens if you run into that? Sorry. Can I go back to this blast furnace monitoring? Yes. It seemed like you were – that would be a pretty good argument that the actual rule, which was, I think, monitor at every opening, rather than the single opening known to be – Yeah. The cast house and the roof line, yeah. Right. Okay. Yeah, so that was – yeah, so – The best thing you could say, maybe, is it's sort of self-evident that if you have to monitor every opening rather than just one, that's inherently impracticable. Oh, no. It's not just self-evident. And so, we submitted with the reconsideration petitions. I mean, one of the things we tried to say is, what happens if we have to comply with this? One of the problems with reading every opening – so, if you're going to do a Method 9 reading, you have to position yourself for the – there's requirements. So, one of the things we did was we had, like, the Manga-esque declaration where you said, what will be the burden on us to actually try to position ourselves to read all of these openings? And, you know, the assumption in the declaration is, will this require you to add monitors? This will not require you to make major operational changes. And we pointed out, yes, it will, because if we're going to have to read all of the openings, that's a significant investment in staff for coming up with some new procedure for monitoring that is not consistent with Method 9. I mean, Method 9 requires you to read the highest opacity. I appreciate that in the declaration. Is there somewhere where the EPA endorses those assertions? Right. Well, that's right. So, in the December preamble, they do refer to the petitions for reconsideration. So, they do state it generally, and they say, we've recognized that there are concerns with the language. It's not lining up with the preamble. It's, in fact, requiring to read every opening in the rule as opposed to the highest point, and then refers to the petitions for reconsideration, which is essentially the further justification. And, yes, they could have been more explicit in the rule. But that's why I was pointing out, they were no more explicit when they set the original one-year deadline. Unless there are other questions. Okay. Thank you. Ms. Lee, we'll give you two minutes. Ms. Lee, what do you think of this reading that was suggested by Interveners Council, that the statute means you have to provide for compliance as expeditiously as practicable, period, but whatever deadline you set, it can't be any later than three years after the effective date of such standard. Is that a textual way to reconcile the statute with what the agency did? No. Again, I think EPA just didn't explain why it satisfies both halves of that requirement in the statute. So, I don't think that's a reasonable interpretation. So, you're saying they would still have to at least explain why or what their position is on expeditiously as practicable? Yes. How does the new deadline provide for compliance as expeditiously as practicable? And if it doesn't, you could probably still set it for three years, but you still have to address expeditiously as practicable? You still have to offer some explanation, yes. So, is that just some magic words requirement? So, if they had said what they said about why the old standards were not practicable, in part because the 2024 rule doesn't really justify the initial deadlines, would it be sufficient to explain why the old deadlines were not practicable and then just use the words? And so, we go to three years because that would be as expeditiously as practicable. Would that satisfy the statute? No. I mean, I think it's a little hard to address this in the abstract, but perhaps a different type of example is if you were a law professor and you set a deadline for a term paper and you said students could ask for an extension of any amount of time as long as they justified why they needed that specific amount of time and it couldn't be more than a month. It wouldn't be enough for a student to send you an email to say that they just couldn't get it done by the original deadline and they just wanted a month because that was the maximum amount of time. That's what's missing there, the connection between the new deadline that's being requested and why that would facilitate the completion of the task. So, I also just wanted to quickly address intervenors' characterization of this as a continuous evolution of EPA's position. In August 2024, EPA did answer the petitions for reconsideration and found that there was nothing in the reconsideration petitions that called into question the validity of the 2024 rule. It defended the 2024 rule in court as supported by the record and reasonable. So, there really was a change in position in March 2025. I think there was also a question about what would happen if at the end of three years a source couldn't comply and that's a three-year limit. I think we've discussed this at length already, but EPA could do a source-by-source compliance extension for one year and perhaps use that time to address that problem. Then, finally, I think there was an extended discussion about these basic oxygen process shop requirements about the different number of openings. I think as we pointed out in our brief, that's the one that is really unclear why that's unfeasible because the rule specifically allows for the use of cameras to observe multiple openings and no one's contested that observing the opening with the highest opacity would be infeasible. Thank you, Asli. Thank you.
judges: Rao; Pan; Garcia